DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Donna Cozzone ("Donna"), formerly Donna Keglovic, appeals the Summit County Court of Common Pleas decision to modify Mark Keglovic's ("Mark") child support payments. Mark cross-appeals asserting the trial court erred in calculating the amount of the modified payments, in finding him in contempt of court for failure to make support payments and in ordering him to pay Donna's attorney fees. We affirm.
 I.
Donna and Mark were divorced on January 20, 1998. As part of their separation agreement, Mark agreed to pay Donna spousal support in the amount of $75 a week for five years. Donna and Mark agreed to a shared parenting plan for their daughter. According to the shared parenting plan Mark would pay child support in the amount of $175 a week.[1]
On February 17, 1999, Donna moved the court to: 1) find Mark in contempt for failure to pay the spousal and child support, 2) modify the visitation schedule due to Mark's failure to comply with the existing schedule, and 3) award attorney fees. On March 15, 1999, Mark moved the court for a modification in his child support payments.
Both Donna and Mark testified at a hearing before the magistrate. The trial court approved the magistrate's findings that Mark was voluntarily underemployed and imputed a salary of $26,000 a year for purposes of calculating his child support payments. The new calculations indicated greater than a ten percent difference from his current payment. Pursuant to R.C. 3113.215 the magistrate modified Mark's payment from $758.33 to $326.44 per month. The magistrate also found Mark in contempt for failure to make spousal and child support payments and ordered him to pay Donna's attorney fees in the amount of $500.
Both parties objected to the magistrate's decision. On January 10, 2000, the trial court found that Mark was voluntarily underemployed and that facts existed to support Mark's imputed income. Furthermore the trial court found error with the magistrate's calculations regarding Donna's actual income[2] and the costs of childcare and health care. Based on new calculations, the court modified Mark's child support payments from $758.33 to $437.83 per month, ordered Mark to obtain health insurance and to assume 45% of all uninsured health expenses. Donna received a judgment in the amount of $5872.48 for arrears in support payments. The court found Mark in contempt of court and awarded Donna attorney fees in the amount of $500.
On February 3, 2000, Donna filed a notice of appeal and Mark filed a motion in the trial court seeking relief from judgment pursuant to Civ.R. 60(A). On February 8, 2000, the trial court filed an amended judgment entry to reflect a change in the amount of judgment awarded to Donna. The original amount of $5872.48 failed to take into consideration lower amount of the modified child support payments. The correct amount was $4109.73. On March 2, 2000, this court allowed Donna to amend her notice of appeal to include the February 8, 2000 amended judgment entry.
Both parties timely appealed to this court.
 II. Donna's First Assignment of Error: THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT INVOKED THE TEN PERCENT RULE SET FORTH IN R.C. 3113.215(B)(4) AND REDUCED THE CHILD SUPPORT OBLIGATION OF THE APPELLEE/FATHER FROM $175.00 PER WEEK ($758.33 PER MONTH) TO $437.83 PER MONTH EFFECTIVE MARCH 15, 1999.
In her first assignment of error, Donna's argues that without substantially changed circumstances the trial court erred in modifying Mark's child support payments. We disagree.
An appellate court uses the abuse of discretion standard when reviewing matters concerning child support. See Booth v. Booth (1989),44 Ohio St.3d 142, 144. An abuse of discretion connotes more than an error of law or judgment, but implies that the judgment can be characterized as unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Child support orders are governed by R.C. 3113.215. "When the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4) in the Child Support Guidelines and the standards set out in Marker v. Grimm
(1992), 65 Ohio St.3d 139 [.]" DePalmo v. DePalmo (1997),78 Ohio St.3d 535, paragraph two of the syllabus.
Pursuant to R.C. 3113.215(B)(4), if a party to a child support order moves for a modification, the court must recalculate the statutory support amount using the current support schedule and the parties updated financial information. The recalculated amount is then compared to the amount that is actually being paid under the existing child support order. If the recalculated amount deviates from the existing order by more that ten percent, then that deviation "shall be considered by the court as a change of circumstance that is substantial enough to require a modification of the amount of the [existing] child support order." R.C.3113.215(B)(4). This provision is known as the ten percent rule.
In the present case, Mark moved the trial court for a modification of his existing child support payments of $758.33 per month. The trial court found Mark was voluntarily underemployed and imputed an income of $26,000 to him for purposes of calculating his child support payments. The new calculations revealed that Mark should be paying $437.83 per month. There was greater than a ten percent difference between $758.33 and $437.83. Therefore, pursuant to R.C. 3113.215 Mark was entitled to a modification. DePalmo, 78 Ohio St.3d at 539 (holding that "if a support order already exists, the only test to determine whether child support shall be modified is set forth by R.C. 3113.215(B)(4)"); R.C.3113.215(B)(4).
Donna relies on an earlier decision of this court, Smith v. Collins
(1995), 107 Ohio App.3d 100, to support her position that the modification was an error. We agree with the trial court that the controlling case on this issue is DePalmo. Accordingly, we find that the trial court's modification of Mark's child support payment was not an abuse of discretion.
Donna's first assignment of error is overruled.
 III. Donna's Second Assignment of Error: THE TRIAL COURT ERRED AS A MATTER OF LAW IN THE ISSUANCE OF THE AMENDED JOURNAL ENTRY DATED FEBRUARY 8, 2000.
In her second assignment of error Donna argues that after she filed her notice of appeal to this court the trial court was without jurisdiction to act on Mark's February 3, 2000 motion for relief from judgment. On February 8, 2000 the trial court filed an amended journal entry correcting the award of past due support payments to reflect the retroactive effect of the modified child support payment. On March 2, 2000, this court recognized the trial court should have refrained from acting on Mark's motion until it received leave from this court. However, we acted sue sponte and ordered the trial court to transmit the docket and journal entries including all court orders filed on or before February 8, 2000.
We note that Mark was entitled to the correction that appeared in the amended journal entry. Generally, an order that grants a motion for modification of child support will relate back to the date upon which the motion was filed. See, e.g., State ex rel. Draiss v. Draiss (1990),70 Ohio App.3d 418, 421; Murphy v. Murphy (1984), 13 Ohio App.3d 388,389. This court follows the general rule that, "absent some special circumstance, an order of a trial court modifying child support should be retroactive to the date such modification was first requested." Draiss,70 Ohio App. 3 d at 421. This general principle is based on equity, recognizing that considerable time may pass between the date a motion to modify child support is filed and when the court disposes of it.
Donna's second assignment of error is overruled.
 IV. Mark's First Assignment of Error: THE TRIAL COURT ERRED IN ORDERING MR. KEGLOVIC TO PAY CHILD SUPPORT OF $437.83 PER MONTH.
Mark argues in his first assignment of error that the trial court erred in finding that he was voluntarily underemployed and in imputing an income of $26,000 for purposes of child support calculations. We disagree.
In calculating child support, the court must consider the combined gross income of both parents. See R.C. 3113.215 (B)(2). If the court determines that a parent is voluntarily unemployed or underemployed, it may impute to that parent income which it determines the parent would have earned if fully employed. R.C. 3113.215 (A)(5). "[T]he question whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." Rock v. Cabral (1993), 67 Ohio St.3d 108, 112.
Mark asserts that the trial court failed to follow a two step process necessary to impute an income to him. First the court must determine that he is voluntarily unemployed or underemployed. Second the court must consider "the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides." R.C. 3113.215(A)(4)(b).
Mark testified that at the time of the divorce, January 1998, he was employed at Safeway Tire earning $6.75 per hour. His gross income for 1997 was $16,589. In February 1998, Mark changed jobs and began working at Jack Shaw Chevrolet for $500 per week ($26,000 per year). Mark remained at Jack Shaw Chevrolet for approximately five months. In June 1998 he quit that job. Mark was unemployed for four months. In October 1998, he began working for his brother-in-law at Satin Ride, a horse transport business. He received $200 per week for working with the horses at Satin Ride. In addition to the wages, Mark's brother-in-law allowed him to live rent free in an efficiency located in the stables. For a short time, Mark also received $120 per week from a neighbor for taking care of her horses.
Mark claims he is an alcoholic and he asserts that his alcoholism prevents him from working in the automotive industry. The stress and pressure of working in or managing a body shop caused severe drinking situations. Mark received outpatient treatment at Glenbeigh for three months between November 1998 and January 1999. Mark admits that he still has a problem and was charged with a DUI in May 1999. He testified that his alcoholism makes him a liability for a body shop because the job requires him to test drive vehicles.
Mark's "subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to [him] in calculating his * * * support obligation."Rock, 67 Ohio St.3d at 111. We find the trial court did not err in determining that Mark was voluntarily unemployed.
Contrary to Mark's assertion that there was no evidence regarding the various factors listed in R.C. 3113.215(A)(4)(b) we find the transcript of the hearing discloses that considerable testimony was given concerning the income/employment issues. Under the current facts and circumstances of this case, we do not find an abuse of discretion in the trial court's determination that Mark was voluntarily unemployed and that an income of $26,000 should be imputed to him for the purposes of determining his child support obligation.
Mark's first assignment of error is overruled.
 V. Mark's Second Assignment of Error: THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING MR. KEGLOVIC IN CONTEMPT OF COURT AND IN ORDERING MR. KEGLOVIC TO PAY $500 IN ATTORNEY FEES.
In his second assignment of error, Mark asserts that his inability to comply with the support order is a defense to a charge of contempt. Mark argues on appeal that his alleged alcoholism prevents him from working in the automotive industry and that he manages to survive on the kindness of family members. Due to his financial situation and alcoholism he was not able to make the existing support payments. He argues that the trial court erred in finding him in contempt of court and in ordering him to pay Donna's attorney fees. We disagree.
According to evidence presented at the hearing Mark stopped paying alimony in January 1999. Mark testified that he could only afford to pay $700 a month and that Children's Services divided that amount between his spousal and child support obligations. Mark was obligated to pay $75 per week for spousal support and $175 per week for child support. As of August 2, 1999, Mark owed $5,872.48[3] in support payments.
To grant or deny a motion for contempt rests within the trial court's sound discretion. State ex. rel Adkins v. Sobb (1988), 39 Ohio St.3d 34,35. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore, 5 Ohio St.3d at 218. We find that the trial court did not abuse its discretion in finding Mark in contempt for failure to comply with the support payments.
R.C. 3109.05(C) provides that, if a child support obligor is found in contempt of court for failure to comply with an order to pay child support, the court making the finding, in addition to imposing any other penalty or remedy, "shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt." Accordingly the award of attorney fees was proper.
Mark's second assignment of error is overruled.
 VI.
Having overruled Donna's two assignments of error and Mark's two assignments of error we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
CARR, J. WHITMORE, J. CONCUR
[1] The record reflects the absence of a child support computation worksheet regarding the initial calculation of Mark's child support payments of $175 a week, the amount was merely stated in the shared parenting plan. However neither party appealed the January 20, 1998 order and therefore waived any error in the trial court's adoption of their agreement.
[2] The record reflects that Donna's actual yearly income was $31,973 and the magistrate's initial calculations were based on an incorrect income of $19,675.
[3] We note that this amount reflects a failure to make the pre-modification child support payments. Mark filed his motion for a modification on March 15, 1999, and the modified payment (a difference of $320.50) is applied from that date thereby reducing the amount of $5,872.48 to $4109.73.