DePalmo, Appellant, *v.* DePalmo, Appellee.

[Cite as *DePalmo v. DePalmo* (1997), 78 Ohio St.3d 535.]

(No. 96–529—Submitted February 18, 1997—Decided June 11, 1997.)

536

*Tzangas, Plakas & Mannos, James R. Recupero* and *David L. Dingwell,* for appellant.

*Kimberly R. Hopwood,* for appellee.

LUNDBERG STRATTON, J. The appellate court certified the following issue to us:

■■■■■■■■■■■■■■

"[W]hether a Trial Court may modify an existing child support arrangement under which the custodial parent assumes sole responsibility for the support of the children when there is no finding under the following dual threshold test:

"(A) the supporting custodial parent's circumstances have changed to the extent that that parent can no longer provide the total amount reasonable for the support of the children, or

"(B) the noncustodial parent's circumstances have changed substantially and the trial court in its discretion finds it is in the best interest of the children to receive support from that parent."

We hold that when a trial court either establishes an initial child support order, or modifies an existing child support order based on an agreement under which the custodial parent assumed sole responsibility for the support of the child, the Child Support Guidelines must be followed pursuant to the standard laid out in *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496. We specifically reject the dual-threshold test required by *Anderkin v. Lansdell* (1992), 80 Ohio App.3d 687, 610 N.E.2d 570.

On April 12, 1990, R.C. 3113.215 became effective, establishing Child Support Guidelines which require a trial court to calculate the child support obligation in accordance with a detailed child support schedule and worksheet outlined in the statute. Am. Sub. H.B. No. 591. 143 Ohio Laws, Part IV, 5957, 5997. This court in *Marker v. Grimm, supra,* has interpreted the guidelines as follows:

(1) A child support computation worksheet must actually be completed and made a part of the trial court's record.

(2) This requirement is mandatory and must be literally and technically followed.

(3) Any court-ordered deviation must be supported by findings of fact and must be journalized.

In *Marker,* the trial court had not followed the guidelines, had not completed the worksheet, and had made no specific finding that the guidelines were "unjust or inappropriate and would not be in the best interest of the child" as required by R.C. 3113.215(B)(3). The *Marker* court found that the judge was required to strictly comply with the statute and that the amount determined under the Child Support Guidelines was "rebuttably presumed to be the correct amount of child support due" and must be ordered unless the court had done both of two steps: (a) made a factual determination and set forth criteria as to why following the guidelines would be unjust or inappropriate and not in the best interest of the child and (b) made an actual entry in the journal of findings of fact to support that determination. *Marker,* 65 Ohio St.3d at 141, 601 N.E.2d at 498; R.C.

3113.215(B)(1). This court has continued to require strict compliance in subsequent cases. See *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218.

The conflict in this case arises over what happens when there is no existing "child support order." In this case, the trial court's original entry of August 13, 1990 specifically discussed child support in stating that "all support obligations due from the plaintiff shall be waived." Some courts have found that such a waiver is the equivalent of a lack of a child support order. However, the referee rejected the *Anderkin* test (which started with the premise that such an agreement was the equivalent of no order), which had been proposed by Florence, finding that it was immaterial whether or not there was a prior order.

The *Anderkin* court established a dual-threshold test, which requires either that the *custodial* parent's circumstances have changed to the extent that the parent can no longer provide the total amount reasonable for support or that the *noncustodial* parent's circumstances have changed substantially and that the court finds that it is in the best interest of the child to receive support from both parents. The courts which follow the *Anderkin* test seem to focus solely on the issue of whether a child support order is already in existence. However, we agree with the referee and find that this is a distinction without a difference and is immaterial to whether child support should be calculated according to the statutory guidelines.

Therefore, one must look to the *Marker* standard in this case. The trial court's August 13, 1990 order stated: "IT IS ORDERED, ADJUDGED and DECREED that the parties abide by these orders in the *best interest* of the child." (Emphasis *sic.*) However, the order made no finding of facts or a determination that the application of the Child Support Guidelines would be "unjust or inappropriate." The entry appeared to be merely a rubber-stamping of an agreement between the parents which waived support from Florence. That order was incorporated by reference in the June 2, 1994 order. The referee rejected this approach and instead, using the *Marker* approach, applied the Child Support Guidelines to the facts at hand, completed the worksheet, considered the issues urged by the plaintiff regarding the luxuries or additional benefits she had supplied to her son, and determined that these circumstances did not show that a support award pursuant to the guidelines would be unjust or inappropriate. The referee ordered that full support of the child by both parents would be in the best interest of the child. The trial court adopted the findings of the referee, and the decision was upheld by the court of appeals.

However, if a support order *already* exists, the only test to determine whether child support shall be *modified* is set forth by R.C. 3113.215(B)(4):

"If an obligor or obligee under a child support order requests the court to modify the amount of support required to be paid pursuant to the child support

order, the court shall recalculate the amount of support that would be required to be paid under the support order in accordance with the schedule * * *, and if that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support that is required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule * * * shall be considered by the court as a change of circumstance that is substantial enough to require a modification of the amount of the child support order." In determining the ten percent figure, the court takes into account all other factors required by R.C. 3113.215(B)(4), such as the court-ordered cost of health insurance. Medical needs of the child can constitute a sufficient change of circumstances without regard to the ten percent test. If there is a sufficient change in circumstances, the court shall require support in the amount set by the guidelines unless that amount would be unjust or inappropriate and not in the best interest of the child. The ten percent difference applies to the *change in the amount of child support*, not to the change in circumstances of the parents. The trial court also has the obligation to test any proposal of the parents to see if it meets the Child Support Guidelines under the *Marker* standard even if the parties agree between themselves to a different amount or agree that only one party shall assume all support. See *Martin v. Martin* (1993), 66 Ohio St.3d 110, 609 N.E.2d 537.

The law favors settlements. However, the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support. *Id.* at 115, 609 N.E.2d at 541.

Obviously, when the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met. Since the referee found the guidelines were not unjust or inappropriate and were in the best interests of the child, the new amount ordered by the trial court became the child support obligation. We find no abuse of discretion in this.

In conclusion, we find that the Fifth District Court of Appeals has stated the law correctly. Whether a court is establishing an initial child support order or whether the court is modifying an order based on an agreement between the parties that does not include an order for the payment of child support, the court must apply the Child Support Guidelines as required by the standards set out in *Marker*. When the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C.

3113.215(B)(4) in the Child Support Guidelines and the standards set out in *Marker.*

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.