OPINION
This is an accelerated appeal taken from a final judgment of the Domestic Relations Division of the Lake County Court of Common Pleas. Appellant, Denny L. Sellers, appeals from the trial court's decision with respect to child support following a remand from this court.
The facts underlying the instant case are fully detailed inSellers v. Sellers (July 17, 1998), Lake App. No. 97-L-167, unreported, 1998 Ohio App. LEXIS 3306. Consequently, we will only provide a brief encapsulation herein.
Appellant and appellee, Mary J. Sellers, were married on January 20, 1990. A son, Michael, was born as issue of the marriage on July 5, 1990. Following a brief marital union, the parties were divorced on November 15, 1994. In the divorce decree, the trial court ordered that both parents be designated as residential parents and legal custodians of Michael pursuant to a shared parenting plan that was attached to and incorporated by the decree. Under the terms of the original shared parenting arrangement, appellant and appellee were each to have physical custody of Michael for seven days at a time with alternating possession every Wednesday.
The trial court further ordered that the parties would never pay child support to each other. Both the divorce decree and the shared parenting plan contained identical language with respect to the nonpayment of child support:
 "Neither now, nor in the future, will either party pay child support per se. Each party will provide in-kind contributions for clothing, food, shelter, and related miscellaneous items and costs for the child when the child is in his or her respective possession. If either party is called upon to pay child support in the future, the other party will indemnify and hold the other harmless and repay in an amount equal to the amount of child support that the other is required or called upon to pay. A substantial premise or basis of the Agreement between the parties is neither party shall pay child support ever to the other now or in the future, unless either parent becomes disabled and is unable to support the child." (Emphasis in original.)
Subsequently, a magistrate conducted hearings to determine whether the shared parenting plan should be modified. The magistrate issued a written decision on December 11, 1995, in which he concluded that the child's best interests would be served if appellant had primary custody of Michael subject to limited weekday and weekend visitation with appellee.
On July 3, 1996, the trial court overruled appellee's objections and adopted the decision of the magistrate. In doing so, the trial court ordered the parties to submit a new custody and visitation schedule establishing appellant as the primary caretaker. Beyond this, the trial court decreed that the other terms of the shared parenting plan were to remain in effect.
On August 23, 1996, appellant filed a motion to establish child support, notwithstanding the parties' previous agreement to forego child support as reflected in the November 15, 1994 divorce decree and attached shared parenting plan. In support of his request to institute the payment of child support, appellant argued that the modification to the shared parenting plan had dramatically altered the amount of time that Michael would be in his care and custody. Specifically, appellant observed that he and appellee had approximately equal custodial time with Michael under the original terms of the shared parenting plan because each parent had possession of the boy for alternating one week periods. Under this arrangement, it was logical that neither parent would pay child support, but rather would provide in-kind contributions for clothing, food, shelter, and other costs when Michael was in his or her respective custody. Following the trial court's modification of the shared parenting plan, however, appellant exercised primary custody over Michael. This, in turn, increased the expenses that appellant incurred while caring for the child.
The motion was referred to the magistrate who determined that the relevant language in the divorce decree and shared parenting plan dictated the nonpayment of child support. As a result, the magistrate denied appellant's request to enter a child support order establishing appellee as the obligor. Appellant filed objections to this decision. On June 18, 1997, the trial court overruled the objections and adopted the magistrate's decision.
From this judgment, appellant filed a timely appeal with this court. We reversed the judgment of the trial court under the authority of DePalmo v. DePalmo (1997), 78 Ohio St.3d 535. InDePalmo, the Supreme Court of Ohio held that:
 "whether a court is establishing an initial child support order or whether the court is modifying an order based on an agreement between the parties that does not include an order for the payment of child support, the court must apply the Child Support Guidelines as required by the standards set out in Marker [v. Grimm (1992), 65 Ohio St.3d 139]." Id. at 540.
In its judgment entry adopting the magistrate's denial of the motion for child support, the trial court found that there was "no need to compute or present a worksheet if the [child] support is precluded by contract." The contract referenced by the trial court was the shared parenting plan. This judgment was erroneous based on the holding announced in DePalmo. Regardless of whether the original order decreeing the nonpayment of child support was construed as the absence of an initial child support order per se or as an order for zero payment, the trial court should have followed the Child Support Guidelines and completed a worksheet. Hence, we reversed the trial court's judgment and remanded the matter so that the court could comply withDePalmo.
On remand, the trial court ordered the parties to exchange information relating to the child support issue. Upon completing such discovery, counsel for both parties were to submit either a set of agreed child support worksheets or separate worksheets. A pretrial hearing was held on October 19, 1998, and a trial on the issue of child support was conducted on December 3, 1998.
Thereafter, on March 19, 1999, the trial court issued a written decision. In its judgment entry, the trial court noted that appellant's counsel failed to submit child support worksheets for 1996 and 1997 as previously ordered. In addition, the trial court found that the 1998 worksheet submitted by appellant's counsel used an incorrect annual gross income for appellant. As a result, the trial court accepted the financial data contained in the worksheets submitted by appellee's counsel. The trial court attached worksheets for 1996 through 1998 to its entry.
The 1996 and 1997 worksheets showed appellee's annual child support obligation to be $916.69 and $902.28, respectively, on line 24. The trial court, however, elected to deviate from these figures by reducing appellee's support obligations to zero for 1996 and 1997. In the entry, the trial court included the following finding of fact as support for its determination to deviate from the amount of child support that would have otherwise been calculated on the applicable worksheets:
 "The Court further finds that a deviation ought to be allowed from each of the child support worksheets based upon the previous contract entered into by these parties, that is that neither party `* * * shall pay child support ever to the other now or in the future * * *,' and for all the reasons set forth in this Court's prior Judgment Entry filed June 18, 1997. The Court, therefore, reduces the amount of child support payable from mother to father for 1996 and 1997 to zero."
The 1998 worksheet showed appellee's annual child support obligation to be $4,146.25 on line 24. Again, the trial court deviated from this figure and reduced appellee's obligation to $1,081.13. The trial court included an explanation for this deviation in the judgment entry. Based upon the $1,081.13 obligation imposed on appellee for 1998, the trial court ordered her to pay appellant $20.79 per week plus poundage in child support.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignment of error:
 "Whether the trial court abused its discretion and erred to the prejudice of the appellant when it denied appellant's motion to establish child support (filed August 23, 1996) based upon the language in the shared parenting decree which stated that neither now, nor in the future, will either party pay child support per se."
In his sole assignment of error, appellant posits that the trial court abused its discretion by "denying" his motion to establish child support. As previously explained, this motion was originally filed by appellant on August 23, 1996, following the trial court's modification of the shared parenting plan.
Although appellant makes repeated references to the trial court's supposed refusal to issue a child support order, it is apparent that this is not an entirely accurate characterization of what transpired in the court below. The trial court did issue a child support order obligating appellee to pay $20.79 plus poundage in weekly child support commencing in 1998 and proceeding prospectively. The trial court arrived at this amount by reducing appellee's annual support obligation to $1,081.13 from the calculated amount of $4,146.25 as reflected on line 24 of the 1998 worksheet. Appellant does not take issue with the trial court's action in this regard. There is absolutely nothing in appellant's brief challenging the decision of the trial court to deviate from appellee's support obligation as shown on line 24 of the 1998 worksheet in order to arrive at the $20.79 figure.
After examining the argumentation contained in appellant's brief, it is obvious that what he really takes issue with is the decision of the trial court to reduce appellee's back support obligation to zero for 1996 and 1997. This explains appellant's less than cogent assertion that the trial court "denied" his motion to establish child support.
Having clarified this point, we can turn to the substance of the assigned error. In essence, appellant asserts that the trial court abused its discretion by reducing appellee's annual support obligation to zero for the years 1996 and 1997 by deviating from the $916.69 and $902.28 amounts calculated, respectively, on line 24 of the applicable worksheets. Specifically, appellant takes exception to the stated reason offered by the trial court as support for the deviations, to wit: the relevant clause in the divorce decree and shared parenting plan (i.e., "neither party shall pay child support ever to the other now or in the future") mandated the nonpayment of child support. According to appellant, this was an improper basis upon which to deviate from the amount of child support that would have otherwise resulted from the use of the basic child support schedule and applicable worksheets for the years 1996 and 1997.
Upon review, we agree that the trial court's judgment must be reversed with respect to the 1996 and 1997 child support worksheets, but we do not predicate our decision upon the reason argued by appellant. Instead, we conclude that reversal is required because the trial court erred in its application of R.C.3113.215. Specifically, the trial court applied an incorrect division of the statute when adjudicating the child support issue on remand.
In the case at bar, it is uncontroverted that the custodial arrangement between the parties has its origins in a shared parenting plan approved and adopted by the trial court as part of the November 15, 1994 divorce decree. In this decree, the trial court ordered "that both parties shall be designated as `legal custodians' and `residential parents' of the minor child." Although appellant was named the primary residential parent for school purposes, overall parental rights and responsibilities were allocated equally between the parties, to wit: each parent had possession of Michael for alternating one week periods as set forth in the shared parenting plan.
Subsequently, the custodial arrangement was modified by the trial court such that Michael began spending a majority of time with his father, thereby creating a more stable home environment than had existed when the boy was shifted between his parents on a weekly basis. The trial court, however, expressly ordered that the remaining provisions of the shared parenting plan remain in full force and effect. Following this, appellant filed the motion to establish child support which is the subject of the appeal herein.
Thus, the custodial arrangement which currently prevails emanates from a shared parenting order in which the trial court decreed that appellant and appellee were both legal custodians and residential parents of the minor child. This is important for purposes of our analysis of the child support issue raised in the instant appeal.
In Luke v. Luke (Feb. 20, 1998), Lake App. No. 97-L-044, unreported, 1998 WL 172813, this court explained how the process by which a trial court deviates from the amount of child support as calculated on the worksheet depends upon whether or not the support order is made pursuant to a shared parenting plan. Our decision in Luke discusses this issue in great detail; therefore, we will only summarize it here.
In a "traditional" arrangement where one parent is designated as the residential parent and the other parent is given companionship rights, R.C. 3113.215(B)(1) sets forth the mandate to the trial court regarding the determination of child support. Pursuant to this statute, the trial court is instructed to complete the child support worksheet and issue an order in accordance with those computations unless the court finds that it would not be in the child's best interest to do so. Luke, 1998 WL 172813, at 4-5.
The applicable worksheet contains a column for each parent. After the calculations are completed, line 24 contains two figures representing the annual child support obligation of each parent. R.C. 3113.215(C) provides, however, that the parent who has been designated as the residential parent shall not be ordered to pay to the child support enforcement agency the figure that appears in his or her column on line 24 because it is presumed that such parent will spend the amount calculated in the worksheet directly for the care of the child. The non-residential parent, however, is ordered to pay the figure contained in his or her column on line 24 for the benefit of the child, unless the trial court follows the procedure described in R.C. 3113.215(B)(2)(c) allowing the court to deviate therefrom. Luke, 1998 WL 172813, at 5.
By contrast, R.C. 3113.215(B)(6)(a) governs child support orders in the context of shared parenting plans, and provides in part:
 "If the court issues a shared parenting order in accordance with section 3109.04 of the Revised Code, the court shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in division (E) of this section, through line 24, except that, if the application of the schedule and the worksheet, through line 24, would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in division (B)(3) of this section, the court may deviate from the amount of child support that would be ordered in accordance with the schedule and worksheet * * *."
Thus, when issuing a child support order under a shared parenting plan, the trial court is likewise required to adhere to the computations on the worksheet unless the court finds that it would not be in the best interest of the child because of the extraordinary circumstances of the parents as defined in R.C. 3113.215(B)(6)(b)(i)-(iii) or because of any other factors and criteria set forth in R.C. 3113.215(B)(3). Unlike the "traditional" arrangement, however, the language in R.C. 3113.215(C) negating the residential parent's duty to pay his or her annual support obligation as calculated under the worksheet does not apply to a shared parenting order according to the decision of the Supreme Court of Ohio in Pauly v. Pauly
(1997), 80 Ohio St.3d 386. Luke, 1998 WL 172813, at 5.
Ergo, this court held in Luke that both parents under a shared parenting plan are required to pay child support as calculated on the worksheet. Id. This requirement lends itself to an "offset" of one obligation from the other, rather than two separate support orders. Id. at 5, fn. 6. Furthermore, the trial court must first offset the parents' respective support obligations before reaching the issue of whether to deviate from the amount of support as calculated on the worksheet. Again, in determining whether to deviate, the trial court is compelled to consider the factors in R.C. 3113.215(B)(3) and the extraordinary circumstances outlined in R.C. 3113.215(B)(6)(b)(i)-(iii).
In the present case, a review of the trial court's judgment, including the attached child support worksheets for 1996 and 1997, reveals that the court applied the procedure described in R.C.3113.215(B)(2)(c) to justify its deviation from the amount of support that would have resulted from the use of the worksheets. In doing so, the trial court treated appellant as the sole residential parent, while appellee was cast in the dual role of nonresidential parent and child support obligor.
This was error. There is nothing in the record to indicate that the trial court ever terminated appellee's status as a legal custodian and residential parent of the minor child as established in the original divorce decree with accompanying shared parenting plan. Although the trial court subsequently modified the custodial arrangement such that appellant became the primary caretaker, the court never vacated its prior shared parenting order.
In light of this, the language of R.C. 3113.215(B)(6)(a) governs. Pursuant to our decision in Luke, appellant and appellee were both required to pay child support as calculated on the relevant worksheets for 1996 and 1997 subject to an offset. As explained in Luke:
 "In using the term `offset,' we are referring to the process by which the court, before it considers any deviation, deducts the figure in line 24 of the worksheet of the parent who has the lesser obligation from the figure in line 24 of the worksheet of the parent who has the greater obligation. When dealing with a shared parenting plan, this calculation is mandatory and must be completed before the court considers giving the parent a `credit for the time the child resides with her. In utilizing the term `credit,' as the court did in Pauly, we are referring to a reduction from the child support obligation, calculated in the worksheet, that a court is permitted to give for time the child resides with the parent who will be or has been ordered to pay child support. This reduction is discretionary with the court. Pauly. Both of these calculations must be completed before the obligation is reduced to an order." Id. at 5, fn. 7.
The judgment of the trial court must be reversed given our conclusion that it did not follow the procedure outlined in R.C. 3113.215(B)(6)(a) governing child support calculations in the shared parenting context. Because the trial court's judgment must be reversed on other grounds, appellant's assignment of error has been rendered moot. See App.R. 12(A)(1)(c).
Based on the foregoing analysis, the judgment of the trial court is reversed in part as to the child support calculations on the 1996 and 1997 worksheets, but it is affirmed in all other respects. The matter is hereby remanded for further proceedings consistent with this opinion
 _____________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.