DECISION AND JOURNAL ENTRY
Appellant, Keith Castle, appeals the modification of child support ordered by the Lorain County Court of Common Pleas. We affirm.
On November 16, 1995, Jacqueline S. Castle, appellee, filed for divorce against Mr. Castle. The trial court granted a divorce on February 3, 1997. Mr. Castle's child support obligation was set at $333.67.
Mr. Castle was employed at Liverpool Coil in early 1998. He testified that, due to his employer's perception that he was a union leader (which he denies), he was given the choice to resign or be terminated from his employment. He chose to resign. At the time of his resignation, he was earning approximately $30,000 per year.
Rather than seek other similar employment, Mr. Castle decided to attend Bryant Stratton. At Bryant Stratton, he pursued the study of microcomputers with the intent of becoming employed in programming and network maintenance upon his graduation. He anticipated graduating in December 1999. When he began employment in his new field, he expected to earn approximately $30,000, which would increase to $42,000-45,000 after five to six years.
On February 26, 1999, Mr. Castle filed a motion to modify his child support obligation because his income had greatly decreased while he pursued his education. The matter was referred to a magistrate. A hearing was held on September 7, 1999 before a magistrate. The magistrate rendered a decision on May 14, 1999 in which the magistrate found, inter alia, that an upward modification of child support was appropriate and recommended that Mr. Castle's child support be increased to $506.07 per month. Mr. Castle filed objections to the magistrate's decision on May 20, 1999. After a hearing on November 19, 1999, the trial court entered judgment on October 20, 1999, increasing Mr. Castle's child support obligation to $506.07 per month. This appeal followed.
Mr. Castle asserts two assignments of error. We will address them together to facilitate review.
 First Assignment of Error THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT MODIFIED THE EXISTING CHILD SUPPORT ORDER AFTER DETERMINING THAT NO CHANGE IN CIRCUMSTANCES EXISTED WHICH WOULD WARRANT A SUPPORT MODIFICATION.
 Second Assignment of Error THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT APPELLANT IS VOLUNTARILY UNDEREMPLOYED AND THEREFORE REFUSED TO REDUCE APPELLANT'S CHILD SUPPORT OBLIGATION.
 Mr. Castle avers that the trial court erred as a matter of law in modifying his child support obligation because there was no evidence of a substantial change in circumstance, rather there was only evidence of the decrease in Mr. Castle's income. Further, Mr. Castle argues that the trial erred in finding him to be voluntarily under employed. We disagree.
When reviewing an appeal from a trial court's adoption of a magistrate's decision under Civ.R. 53(E)(4), we must determine whether the trial court abused its discretion in adopting the decision. Mealey v. Mealey (May 8, 1996), Wayne App. No. 95CA0093, unreported, at 5. "Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision." Id.
An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
When a trial court is asked to modify the amount of child support required to be paid under a child support order, it must recalculate the amount of child support pursuant to the applicable worksheet, and
 if that amount as recalculated is more than ten per cent [sic] greater than or more than ten per cent [sic] less than the amount of child support that is required to be paid pursuant to the existing child support order, the deviation * * * shall be considered by the court as a change of circumstance that is substantial enough to require a modification of the amount of the child support order.
 R.C. 3113.215(B)(4). Moreover, "[w]hen the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4) in the Child Support Guidelines and the standards set out in Marker v. Grimm
(1992), 65 Ohio St.3d 139[.]" DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, paragraph two of the syllabus.
In determining "[i]ncome" to be included in the applicable worksheet, the trial court must include, "[f]or a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent." R.C. 3113.215
(A)(1)(b).
 "Potential income means" * * * [i]mputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides[.]
R.C. 3113.215(A)(5)(a).
When making its determination of the appropriate figures which to utilize in the applicable worksheet under the Child Support Guidelines, the trial court's determination of
 [w]hether a parent is "voluntarily underemployed" within the meaning of R.C. 3113.215(A)(5), and the amount of "potential income" to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion.
 Rock v. Cabral (1993), 67 Ohio St.3d 108, syllabus. Furthermore, "[t]he parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." (Emphasis original.) Id. at 111. Thus, the main objective of R.C. 3113.215 is to protect the best interests of the children. Id.
In the case sub judice, Mr. Castle argues that the trial court erred in finding him voluntarily underemployed. Upon review of the record before us, however, we cannot find that the trial court abused its discretion in finding him to be voluntarily underemployed. Mr. Castle chose to go back to school rather than pursue his current vocation after leaving Liverpool Coil. Assuming, arguendo, that Mr. Castle was constructively terminated from Liverpool Coil due to his perceived union ties, he voluntarily chose to attend Bryant Stratton rather than to seek a similar position. He testified that he did not seek other similar employment because of his desire to earn more income in the future. However, the starting salary in the profession that he decided to enter is the same as he was earning at Liverpool Coil. Moreover, although he speculates that he may be able to earn twelve to fifteen thousand dollars more than his job at Liverpool Coil paid, such an income stream appears to be at least five to six years distant from his graduation. Furthermore, it is undisputed that he voluntarily chose to attend Bryant Stratton rather than to seek comparable employment. Accordingly, we cannot conclude that the trial court abused its discretion in finding Mr. Castle to be voluntarily underemployed.
Mr. Castle also argues that the trial court erred in increasing his child support obligation when the evidence showed that his income decreased. As Justice Holmes noted in his concurring opinion in Marker, 65 Ohio St.3d at 144,
 First, in computing child support in a given case the trial court must determine the gross income of the parent if fully employed; or if the parent is not employed or underemployed, the gross income from any source, except as specifically excluded by the statute, and any potential income of such parent. R.C. 3113.215(A)(1) and (2). In considering the potential
income from such parent, the trial court, pursuant to R.C. 3113.215(A)(5), must first find the parent to be voluntarily unemployed or voluntarily underemployed, and then determine the amount the parent would have received if fully employed determined from the parent's employment potential and probable earnings based upon the parent's recent work history if any, the parent's occupational qualifications, and the prevailing job opportunities, and salary levels in the community in which the parent resides.
 (Emphasis original.) Accordingly, we cannot conclude that the trial court erred in determining Mr. Castle's gross income on the applicable worksheet by reference to Mr. Castle's prior income, due to his voluntary underemployment. Hence, we conclude that the trial court did not abuse its discretion in finding Mr. Castle to be voluntarily underemployed or in calculating his income on the applicable worksheet. Accordingly, Mr. Castle's assignments of error are overruled.
Mr. Castle's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.