This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Michael Carter has appealed a decision of the Summit County Court of Common Pleas, Domestic Relations Division that deviated from the child support schedule, and modified the amount of child support Appellant owed to Defendant-Appellee Gay Carter. This Court remands for further proceedings.
 I
{¶ 2} In May of 1996, Appellant and Appellee were divorced. At the time of the divorce, Appellant and Appellee had three children; Appellee was also pregnant with a fourth child of both parties. Pursuant to the shared parenting plan, which was incorporated in the judgment entry of divorce, Appellant would provide the primary residence for the two older children. The younger child, along with the unborn child, were to remain with Appellee.
{¶ 3} On August 6, 1996, the parties entered into an agreement by which both parties agreed that neither party would pay child support to the other for children that were in his or her custody. The agreed entry also stated that Appellant would be entitled to claim all the children, including the unborn child, as dependents for income tax purposes. In addition, Appellant was designated residential parent and legal custodian of all three children.
{¶ 4} On February 8, 2001, Appellee filed a motion for change of custody. She requested that the shared parenting plan incorporated into the judgment entry for divorce be set aside. On August 8, 2001, pursuant to a settlement agreement reached by both parties, the magistrate amended the shared parenting plan. Appellee became the primary residential parent of three of the children, while Appellant remained the primary residential parent of the fourth child. Further, Appellant was ordered to pay child support of $59.98 per week plus poundage for each of the three children residing with Appellee, which resulted in approximately $183.53 per week and $795.27 per month. In regard to the tax exemptions, the magistrate stated: "The issue of which parent shall be entitled to take which of the children as dependants for purposes of income taxes shall be determined by the court."
{¶ 5} The magistrate resolved the issue regarding which party was entitled to take the children as dependents for tax purposes on August 24, 2001. The magistrate found that Appellant and Appellee earned approximately $47,800 and $11,000 per year, respectively. In concluding that Appellant was entitled to take all four dependency tax exemptions, the magistrate found that "[p]ursuant to the Magistrate's worksheet if [Appellee] is permitted to take three (3) tax exemptions and [Appellant] takes one (1) tax exemption, [Appellee's] household income to meet living expenses will be $20,136.00, while [Appellant's] will be $27,552.00."[1]
The magistrate also determined that "[i]f [Appellant] is permitted to take all four (4) tax dependency exemptions, [Appellant's] cash to meet living expenses would be $30,577.00, while [Appellee's] would be $18,994.00. [Appellee] would lose $1,142.00 in income while [Appellant] would gain $3,025.00." In addition, the magistrate ordered Appellant to pay $1,142 to Appellee from his tax refund.
{¶ 6} Appellant timely filed objections to the magistrate's decision. On review, the trial court adopted the magistrate's decision in part. It found that Appellant was entitled to claim all four children as dependents for income tax purposes and that the parties should share the net tax savings. To effectuate this "sharing" of net tax savings, the trial court amended the parties' child support schedule; Appellant was ordered to pay $879.68 plus the 2 percent processing charge, for a total of $897.27 per month.[2] Appellant has appealed the trial court's decision, asserting four assignments of error, some of which we have consolidated to facilitate review.[3]
 II Assignment of Error Number One
{¶ 7} "THE TRIAL COURT ERRED IN DEVIATING FROM THE CHILD SUPPORT GUIDELINES BECAUSE IT GAVE NO NOTICE OF ITS INTENT TO TAKE ADDITIONAL EVIDENCE."
 Assignment of Error Number Two
{¶ 8} "THE DECISION OF THE TRIAL COURT IN DEVIATING FROM THE CHILD SUPPORT GUIDELINES IS ERRONEOUS AND CONTARY TO LAW AND AN ABUSE OF DISCRETION BECAUSE IT IS BASED UPON EVIDENCE NOT PROPERLY BEFORE THE COURT AND NOT PROPERLY ADMITTED INTO EVIDENCE."
{¶ 9} In Appellant's first and second assignments of error, he has essentially argued that the trial court abused its discretion when it relied on the parties' 2001 income tax returns when it decided to deviate from the child support guidelines.
{¶ 10} As an initial matter, we note that Appellant was given adequate notice of the trial court's intent to use the parties' 2001 income tax returns. During the hearing on Appellant's objections to the magistrate's decision, the trial court expressed concern over the FinPlan calculated by the magistrate. The trial court noted that, in calculating who would best benefit from the four tax exemptions, the magistrate failed to account for the fact that Appellee qualified for earned income credit. As a result, the trial court stated: "What I'm saying is I'm not sure those original figures [derived from the FinPlan calculated by the magistrate] are correct. You see, there's a wrong assumption in here and I'm dealing with the fact that I don't know what to do." Pursuant to Civ.R. 53(E)(4)(b), the trial court then requested additional information in an attempt to correct any errors in the FinPlan. The court stated:
{¶ 11} "I tell you what. I wouldn't mind looking at [the parties'] tax returns that were done and all see to if I can find an accountant to give me some information and get something in writing and have another hearing on it rather than another — I mean, I need the income tax, the W-2, what was withheld, and I had need to know [Appellant's] interest income from last year's tax return."
{¶ 12} The trial court further explained: "I may have another hearing with you. I may send a memo and the attorneys can tell me what they want to do but I'm dealing with faulty assumptions here and I would like to have all the facts correct. I would just like to have the right facts." The trial court then requested that both parties submit copies of their 2000 and 2001 tax returns to the court by March 15, 2002, stating:
{¶ 13} "If I don't have 2000 information in here, I'll do it with the 2001 information, but under Rule 52 [sic], I can update and supplement. So, I like to update and supplement so it's correct. So, March 15th. If you have your 2000 return, would you submit it with your 2001 one return, please, along with your W-2 and you will do the same, [Appellee]. Your 2000 return if you have it along with your 2001 as well as your W-2 for both those years."
{¶ 14} As evidenced by the judgment entry dated April 3, 2002, both parties failed to submit tax returns for 2000 and 2001 by March 15, 2002. Thus, the trial court extended the time for submission of the tax returns; it ordered them to submit copies of their income tax returns by April 15, 2002 and held that "[i]f the parties do not submit a copy of their income tax returns this Court will dismiss the Plaintiff's Objections to the Magistrate's Decision."
{¶ 15} It is apparent from the February 26, 2002 hearing on Appellant's objections, and the subsequent judgment entry extending the time for the submission of the parties' tax returns, that Appellant was fully aware that the trial court intended to use the parties' 2001 income tax returns in reaching its decision. Furthermore, even if we assume that the trial court improperly relied on the 2001 tax returns, Appellant failed to preserve the issue on appeal. At no time during the February 26, 2002 hearing, or even prior to the trial court's final judgment overruling Appellant's objections, did Appellant object to the trial court's use of the parties' 2001 income tax returns. A party waives any error that he could have, but did not, call to the attention of the trial court at a time when such error could have been avoided or corrected.Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 801, citing LeFort v.Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123. Because Appellant failed to object to the use of the parties' income tax returns, we decline to address whether the trial court abused its discretion in relying on such information. As such, we find Appellant's first and second assignments of error lack merit.
 Assignment of Error Number Three
{¶ 16} "THE TRIAL COURT ERRED IN DEVIATING FROM THE CHILD SUPPORT GUIDELINES BECAUSE SUCH DEVIATION WAS CONTRARY TO THE AGREEMENT OF THE PARTIES AND, IN THE PRESENT CASE, NOT IN THE BEST INTERESTS OF THE CHILDREN."
 Assignment of Error Number Four
{¶ 17} "THE DECISION OF THE TRIAL COURT IN DEVIATING FROM THE CHILD SUPPORT GUIDELINES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS UNREASONABLE, ARBITRARY[,] AND UNCONSCIONABLE."
{¶ 18} In Appellant's third and fourth assignments of error, he has argued that the trial court abused its discretion when it decided to deviate from the child support guidelines.
{¶ 19} A trial court possesses considerable discretion in decisions regarding child support obligations, and such decisions will be reversed only upon finding an abuse of discretion. Pauly v. Pauly
(1997), 80 Ohio St.3d 386, 390, citing Booth v. Booth (1989),44 Ohio St.3d 142, 144. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
{¶ 20} Pursuant to R.C. 3113.215(B)(2)(c)[4], a trial court may deviate from a basic child support order if both of the following apply:
{¶ 21} "(i) The court, after considering the factors and criteria set forth in [R.C. 3113.215(B)(3)][5], determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet in [R.C. 3113.215(E)], through line 24, or in [R.C. 3113.215(F)], through line 23, would be unjust or inappropriate and would not be in the best interest of the child;
{¶ 22} "(ii) The court enters in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet in [R.C. 3113.215(E), through line 24, or in [R.C. 3113.215(F)], through line 23, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination." (Footnote added.)
{¶ 23} In short, a trial court may deviate from the amount of child support prescribed by use of the basic child support order and worksheet if (1) it finds that the amount determined under the schedule is unjust or inappropriate; (2) it finds that the child support amount calculated under the child support schedule would not be in the best interest of the child; and (3) it states its findings of fact that support its determination. R.C. 3113.215(B)(2)(c); McClaskey v. Weaver
(May 30, 2001), 9th Dist. No. 20341, at 4.
{¶ 24} We also note that the Ohio Supreme Court has held that the guidelines presented in R.C. 3113.215 require a trial court to actually complete a child support worksheet and make it part of the record; "this requirement is mandatory and must be literally and technically followed."Depalmo v. Depalmo (1997) 78 Ohio St.3d 535, 538, citing Marker v. Grimm
(1992), 65 Ohio St.3d 139, paragraphs one and two of the syllabus. A trial court's failure to comply with the literal requirements of the statute constitutes reversible error. Dilacqua v. Dilacqua (Sept. 3, 1997), 9th Dist. No. 18244, at 6.
{¶ 25} In the instant matter, Appellant has argued that the trial court abused its discretion when it decided to deviate from the child support schedule because such a deviation was not in the best interests of the children. He has further argued that "an additional reason for finding an abuse of discretion is the Trial Court's apparent use of solely the income of the parties to determine the best interests of the children" and that "it is likewise error for a Trial Court to merely look at the difference in the income of the parties without looking at other factors as well."
{¶ 26} After reviewing the record, we conclude that the trial court's decision to deviate from the child support schedule constitutes reversible error because the trial court failed to complete a child support worksheet as required by R.C. 3113.215(E). See Depalmo,78 Ohio St.3d at 538. The trial court's judgment entry stated:
{¶ 27} "According to the parties' 2001 income tax returns, [Appellant's] gross income is now $51,095.00 and [Appellee's] gross income is now $11,529.00. According to [Appellee's] income tax return, she claims the earned income credit of $4,008.00. According to [Appellant's] income tax return, he pays only $1,744.00 in federal income taxes[.]"
{¶ 28} Based on the foregoing information, the trial court concluded "there is a disparity of income between the parties and their households" and that "[i]t is in the best interest of the children to deviate the child support order upwards by $100.00 per month."[6]
Because the trial court failed to complete a worksheet that clearly indicates how it used the parties' 2001 income tax returns, this Court is unable to determine how the trial court concluded that a deviation in the child support schedule was required. We are equally as uncertain as to how the trial court determined that the child support order should increase from $795.27 per month to $897.27 per month.[7] Therefore, we sustain Appellant's third and fourth assignments of error.
 III
{¶ 29} Appellant's first and second assignments of error are overruled; his third and fourth assignments of error are sustained. The decision of the trial court is reversed and the cause remanded to the trial court to complete a child support worksheet, to enter an order stating the child support guideline amount, and, if the trial court orders support in an amount that deviates from the guideline amount, to provide reasons in support of the deviation.
BAIRD, P.J. and CARR, J. CONCUR.
[1] These figures are based on a FinPlan analysis completed by the magistrate during Appellee's hearing on the motion for change of custody. A FinPlan analysis is a computer generated calculation performed by the magistrate that determines the amount of money each parent contributes to the household. The analysis is used to determine such issues as which parent is entitled to the dependency exemption for income tax purposes.
[2] The trial court did not adopt the magistrate's decision ordering Appellant to pay Appellee $1,142 from Appellant's income tax refund.
[3] Appellee has failed to file a brief. Therefore, this Court may accept Appellant's statement of the facts and issues as correct. App.R. 18(C).
[4] R.C. 3113.215 was repealed effective March 22, 2001. R.C. 3119.22
now governs a trial court's decision to deviate from a child support schedule. This Court, however, must apply R.C. 3113.215 in light of the fact that Appellee filed the motion for change of custody on February 8, 2001. See R.C. 1.58(A)(1); In re Estrada (May 24, 2000), 9th Dist. Nos. 19683, 19817, at 5, fn. 5 (stating that where a motion for permanent custody was filed prior to the effective date of amendments to the applicable statute, the former version of the statute applies).
[5] The statutory criteria a trial court may consider in determining whether to deviate from a child support schedule are:
"(a) Special and unusual needs of the children;
"(b) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
"(c) Other court-ordered payments;
"(d) Extended times of visitation or extraordinary costs associated with visitation, provided that [R.C. 3113.215(B)] does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet in [R.C. 3113.215(E)], through line 24, or in [R.C. 3113.215(F)], through line 23, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of companionship or visitation granted by court order;
"(e) The obligor obtains additional employment after a child support order is issued in order to support a second family;
"(f) The financial resources and the earning ability of the child;
"(g) Disparity in income between parties or households;
"(h) Benefits that either parent receives from remarriage or sharing living expenses with another person;
"(i) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
"(j) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
"(k) The relative financial resources, other assets and resources, and needs of each parent;
"(l) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
"(m) The physical and emotional condition and needs of the child;
"(n) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
"(o) The responsibility of each parent for the support of others;
"(p) Any other relevant factor." R.C. 3113.215(B)(3).
[6] The trial court made findings of fact. It stated that the amount calculated from the basic child support order was unjust and inappropriate and would not be in the best interests of the children. However, because the trial court failed to complete a child support worksheet, these findings were legally unsupported. Furthermore, the trial court failed to support those findings with reasons.
[7] A child support worksheet was filed on the same day as the trial court's judgment entry, but we note that the worksheet is based on the parties' 2000 income tax return; the trial court relied on the parties' 2001 tax returns in reaching a decision. In fact, the worksheet is identical to the worksheet previously completed by the magistrate, and the trial court failed to refer to this worksheet as a reason for deviating from the child support schedule.