This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
¶ 1} A, Don Swank, appeals from a judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which ordered him to pay child support in the amount of $415.10 per month. We affirm.
 I.
{¶ 2} Don Swank and Appellee, Cynthia Swank, were married on June 17, 1978. The couple had two children, Jeremy, born March 11, 1983, and Joshua, born May 16, 1986. The couple's marriage ended in dissolution in 1999. The dissolution agreement provided that Cynthia agreed to waive spousal support and child support as long as Don made the house payment. At some point, Don fell behind in his payments and filed for bankruptcy. On July 31, 2001, the parties entered into a settlement agreement in the bankruptcy court, whereby Don would quitclaim the property to Cynthia and relinquish his right to any equity in the property. The agreement further provided that "Cynthia Swank may file for child support and subsequent child support increase pursuant to their rights decided by a court of competent jurisdiction. Don Swank retains the right to defend against any proceedings for child support."
{¶ 3} On August 3, 2001, Cynthia filed a motion in the domestic relations court to modify child support and for back child support. Don argued that the trial court lacked jurisdiction because the parties resolved the issue of child support in the bankruptcy proceedings and that the issue was barred by res judicata. Over the following months, multiple hearings were held before a magistrate. The magistrate first determined that the court had jurisdiction to modify a separation agreement as to matters of child support and that the parties' agreement filed in the bankruptcy court did not discharge Don's child support obligation. The magistrate ultimately calculated Don's child support obligation at $415.10 per month. The magistrate denied Cynthia's motion for back child support. Don timely objected to the magistrate's decision.
{¶ 4} The trial court determined that there was a change in circumstances based upon the ten percent test established by DePalmo v.DePalmo (1997), 78 Ohio St.3d 535, and ordered Don to pay child support in the monthly amount of $415.10, plus the two percent processing fee. This appeal followed.
{¶ 5} Don raises two assignments of error, which we have consolidated for ease of discussion.
 Assignment of Error One
{¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION BY ESTABLISHING A NEW CHILD SUPPORT OBLIGATION."
 Assignment of Error Two
{¶ 7} "THE TRIAL COURT ERRED WHEN IT DID NOT APPLY THE 10% RULE IN DEPALMO."
{¶ 8} In his assignments of error, Don asserts that the trial court erred when it ordered him to pay child support. We find Don's arguments to be without merit.
{¶ 9} We begin our discussion by noting the appropriate standard of review. In matters concerning child support, an appellate court will not disturb a judgment of the trial court absent an abuse of discretion.Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390, citing Booth v. Booth
(1989), 44 Ohio St.3d 142, 144. An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
{¶ 10} Don argues that the agreement between the parties in the bankruptcy court "transferred tens of thousands of dollars in equity from the appellant to appellee and thereby the appellant paid in advance for his child support obligation." However, to the contrary, the settlement and agreed entry filed in the bankruptcy court clearly contemplated that Cynthia would file for child support in the domestic relations court. Moreover, the agreement does not reflect any agreement between the parties whereby the transfer of Don's equity in the residence would operate as a set-off of future child support payments. Don's argument that he effectively paid child support in advance is not supported by the record.
{¶ 11} Don also argues that the judgment was error because Cynthia could not establish a change of circumstances either since the time of the dissolution in 1999 or since the time of the agreement in the bankruptcy court. He further argues that the court erred when it failed to apply the ten percent test established by DePalmo.
{¶ 12} The ten percent rule provides that when a party seeks modification of an existing child support order, the court shall recalculate support using the appropriate child support calculation worksheet and schedule. If the recalculated amount is more than ten percent greater than or more than ten percent less than the obligation under the existing child support order, then there is a change of circumstances substantial enough to warrant the modification. SeeDePalmo, 78 Ohio St.3d at 539-540; R.C. 3119.76.
{¶ 13} However, where there is no existing order, or if there is an order based on an agreement between the parties that does not include an order for the payment of child support, the court must apply the Child Support Guidelines as required by Marker v. Grimm (1992),65 Ohio St.3d 139. DePalmo, at paragraph two of the syllabus. In Marker, the Ohio Supreme Court held that the statutory provisions governing the calculation of a child support obligation are mandatory in nature and must be followed literally and technically in all material respects. SeeMarker, at paragraph two of the syllabus.[1]
{¶ 14} In this case, the parties' separation agreement contained two provisions, whereby Cynthia waived child support and spousal support so long as Don made the house payment. The parties later entered into a settlement agreement in the bankruptcy proceeding such that Don quitclaimed the property to Cynthia and relinquished his right to any equity. It is clear from the record that at the time Cynthia filed her motion for modification of child support there was no existing child support order.
{¶ 15} The trial court applied the ten percent test of DePalmo, finding that the new child support calculation of $415.10 was more than ten percent more than the previous order of $0. Given that there was no existing child support order in this case, we find that it was unnecessary for the trial court to apply the ten percent test. In any event, the trial court did not abuse its discretion in its calculation of Don's child support obligation because the court followed the mandates of R.C. Chapter 3119.
{¶ 16} R.C. 3119.02 governs the calculation of a party's child support obligation. It provides that the amount of child support shall be calculated "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to3119.24 of the Revised Code." The basic child support schedule is codified at R.C. 3119.021, which provides the amount of child support to be paid, based upon the combined gross income of the parents. R.C. 3119.022
provides the content and form for the child support computation worksheet applicable to situations where one parent is the residential parent or where the parties have shared parenting. The amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is "rebuttably presumed" to be the correct amount of child support due. R.C. 3119.03.
{¶ 17} In this case, the trial court followed the statutory provisions, completed the child support computation worksheet, and determined the amount of Don's obligation. Accordingly, we cannot say that the trial court's judgment, which ordered Don to pay $415.10 per month for child support, was an abuse of discretion. Don's assignments of error are overruled.
 III.
{¶ 18} The assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.
WHITMORE, J. and BATCHELDER, J. CONCUR
[1] Marker specifically addressed former R.C. 3113.215, which was repealed and replaced by R.C. 3119.01, et seq., effective March 22, 2001.