[Cite as *Lloyd v. Lloyd*, 2024-Ohio-56.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

TONYA L. LLOYD,                          :

    Plaintiff-Appellant,              :     CASE NO. 22CA1159

    v.                                :

JOSHUA M. LLOYD,                         :     DECISION AND JUDGMENT ENTRY

    Defendant-Appellee.               :

_____

APPEARANCES:

Robert R. Goldstein, Columbus, Ohio, for Appellant.

Barbara A. Moore, West Union, Ohio, for Appellee.
_____
CIVIL CASE FROM COMMON PLEAS COURT, DOMESTIC RELATIONS DIVISION
DATE JOURNALIZED:1-3-24
ABELE, J.

{¶1} This is an appeal from an Adams County Common Pleas Court judgment that denied a motion to modify child support. Tonya Lloyd, plaintiff below and appellant herein, assigns two errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE COURT ERRED IN ISSUING [A] DECISION WHICH IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
>
> SECOND ASSIGNMENT OF ERROR:
>
> "THE COURT ERRED IN NOT RECALCULATING THE AMOUNT OF SUPPORT THAT WOULD BE REQUIRED TO BE PAID UNDER THE CHILD SUPPORT ORDER IN ACCORDANCE WITH THE SCHEDULE AND THE

APPLICABLE WORKSHEET, AS REQUIRED BY OHIO
REVISED CODE 3119.79(A)."

{¶2} The parties married in 2006 and are the parents of two children, V.L. (DOB 2004) and O.L. (DOB 2010).  On June 20, 2020, appellant filed a complaint for divorce.  Appellant's affidavit listed her income at $41,600, appellee's base yearly income at $84,000, and appellee's estimated total yearly income at $100,000.  On March 19, 2021, the trial court issued a final decree that incorporated, approved, and adopted the parties' separation agreement.  The court: (1) designated both parents as residential parent and legal custodian, and (2) ordered appellee to pay $710.66 per month for child support.

{¶3} On April 8, 2022, appellant filed a motion to modify child support.  Appellant alleged that, although the initial support order included a 50% deviation due to "extended parenting time and post secondary expense," their minor son spends every other weekend, and a few hours on weekdays, with appellee.  In addition, V.L.'s post-secondary expense "is being paid by the company and not by Defendant."  Thus, appellant argued that (1) appellee received a de facto deviation, and (2) appellee's income is "now substantially higher than when the child support was set."

{¶4} Appellant's most recent affidavit listed her yearly income at $41,599 in 2019, $42,474 in 2020, $18,374 in 2021,

current annual income $6,000, and $3,731.15 in total monthly expenses. Appellee's affidavit listed his annual income at $115,477 in 2019, $124,884 in 2020, $30,306 in 2021, current income at $87,038, and $7,713.74 in total monthly expenses.

{¶5} On June 14, 2022, appellee filed a motion for contempt and argued that appellant failed to vacate a specific property as the separation agreement required.

{¶6} On August 25 and November 1, 2022, the trial court held a hearing to consider the pending motions. Appellant testified that, according to the shared parenting plan, appellee should have the children overnight on Wednesdays, Thursdays and every other weekend. However, appellee apparently exercises parenting time with O.L. every other weekend. Appellant pointed out that the initial child support worksheet included a deviation based in part on the expectation that appellee would exercise additional parenting time beyond every other weekend. Furthermore, although appellee recently purchased clothes for their minor son, appellee provides no other in-kind contributions.

{¶7} Appellant stated that, when the trial court established the shared parenting plan, she earned $41,599 per year, but now only receives $500 per month in rental income. At the time of the divorce, appellant worked in healthcare and earned $22 per hour, but she could not continue in that position

because she must now drive their son to and from school. Appellant is, however, pursuing a medical coding degree and is in contact with a hospital about a future position, and does anticipate an increase in income. Appellant also testified that appellee receives income from Lloyd's Excavating, Meigs Township, farming, rentals, Black Diamond Grocery, and real estate.  Appellant explained that appellee's affidavit of income indicated a farming loss, but did not reflect his crop check "anywhere from $2000 to $3000."  Appellant did acknowledge that she remained in their home rent-free for 13 months beyond the decree's requirement to vacate, but explained she waited for refinancing and could not obtain a loan because her "income to debt ratio was too high because I was still on the mortgages."

{¶8}  Appellee testified that his current sources of income include construction, township trustee, farm, and rental property.  Appellee is an employee and owner of his construction company, earns $700 to $900 per month as a township trustee, sometimes sells items to earn additional money, owns five rental properties, and has a home equity loan.  Appellee did purchase a house for their adult daughter and two houses for resale, but due to market changes he has not sold the properties.  In 2021, appellee had $32,000 income from Allied Construction, $4,400 from Firehouse Construction, $71,136 from Lloyd's Excavating, $11,947 from Meigs Township, depreciation of $179,000 and

$64,000 in total income. Appellee owns 50% of Lloyd's Excavating with his father, and appellee described an ongoing excavating project with an original bid of $2.2 million.

{¶9} Appellee further testified that he has two bank accounts, one in his name and one in his and his daughter's name, deposits $25,000 to $45,000 per month in his personal account, pays $648 per month health insurance, pays for V.L.'s online classes, pays the loan and fuel for her car, and deposits money in her account when she overdrafts. Appellee also picks up O.L. two days per week from school and takes him to McDonald's for a snack before he brings him home. Appellee said O.L. stays overnight with him "every other weekend usually," and he would prefer for him to stay with him more, but his son often gets emotional and asks to return to appellant's home. Their adult daughter does not stay with him.

{¶10} Appellee explained that he understood that the parties' separation agreement required him to remove appellant's name from the mortgage and appellant to vacate the home. Although appellee started the refinance process within a week of the divorce, it took much longer to conclude the process. Also, appellee did not evict appellant when she failed to vacate the residence because he did not "wanna be like that." Currently, appellee rents that property for $550 per month, but, to his credit, he did not ask appellant to make payments while

she lived in the home.  However, after appellant sought more child support, appellee's counsel advised him to file a motion for contempt against her.  On November 10, 2022, the trial court denied appellant's motion for modification of child support and appellee's motion for contempt.  The court determined that the "agreed to financial positions of the parties at the time of the divorce have not changed sufficiently to require a modification of child support."

This appeal followed.

## I.

{¶11} In her first assignment of error, appellant asserts that the trial court's decision is against the manifest weight of the evidence.  In her second assignment of error, appellant contends that the trial court erred when it failed to recalculate child support and complete the worksheet that R.C. 3119.79(A) requires.  Because appellant's assignments of error raise related issues, we will consider them together.

{¶12} In particular, appellant argues that the trial court failed to recalculate child support before it decided that no change of circumstances had occurred.  Appellant also argues that the court misstates the source of her income because the court categorized her $6,000 income as social security disability, but, as the appellee concedes, that money is rental income.

{¶13} Generally, a trial court's modification of a prior child support order is within a court's broad discretion and should not be disturbed absent an abuse of that discretion. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9. A trial court abuses its discretion if its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶14} R.C. 3119.79 establishes when a change in circumstances requires the modification of child support:

> (A) If an obligor or obligee under a child support order requests that the court modify the amount of child support required to be paid pursuant to the child support order, *the court shall recalculate the amount of support* that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount. (Emphasis added).

Thus, the statute sets forth three circumstances that require a child support order modification following recalculation: 1) after the guidelines are applied using the parties' current circumstances, at least a ten percent increase or decrease exists in the amount the guidelines establish for support payments (R.C. 3119.79(A)); 2) the evidence shows that the

current support order is not sufficient to satisfy the dependent child's medical needs (R.C. 3119.79(B)); or 3) a substantial change of circumstances occurred and had not been contemplated when the court issued the original child support order (R.C. 3119.79(C)).

{¶15} Trial courts generally follow a two-step process to determine whether to modify a child support order. First, a court must consider whether a substantial change in circumstances has occurred. *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 540, 679 N.E.2d 266 (1997). Second, if a substantial change does exist, a court must order a modification of the order unless the court finds the modified amount would be unjust or inappropriate, or not in the child's best interest. *Id.* at 540. If, however, a trial court denies a motion for modification on the basis that no substantial change in circumstances has occurred, the court must base its finding on specific facts. *Yark v. Yark*, 6th Dist. Fulton No. F-00-010, 2001 WL 27550, * 6 (Jan. 12, 2001). Further, the Supreme Court of Ohio has held a trial court must complete child support computation worksheets and include them in the record so appellate courts can meaningfully review the court's rulings. *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph one of the syllabus.

{¶16} While we do find in the record child support computation worksheets dated June 3, 2020, February 17, 2021, and March 16, 2021, the trial court's entry is dated November 10, 2022. The court also referred to appellant's $6,000 social security disability income (which both parties concede is incorrect). Although the court stated that appellee is to pay appellant $75,000 at a rate of one third per year, and noted the parties' debts, we do not find a child support recalculation.

{¶17} R.C. 3119.79(A) provides that when a party files a motion to modify child support, the court *shall recalculate* the amount of support that would be required. Appellee, however, argues that, if the parties' incomes have not changed, no reason exists to perform a new calculation.

{¶18} When a statute uses the word "shall," that word usually denotes that compliance with the terms of that statute is mandatory. *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, at ¶ 62; *State ex rel. Botkins v. Laws*, 69 Ohio St.3d 383, 385, 632 N.E.2d 897 (1994). "The rule has been stated frequently and clearly: 'In statutory construction, the word "may" shall be construed as permissive and the word "shall" shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage.' " *Dept. of Liquor Control v. Sons of Italy Lodge 0917*, 65 Ohio St.3d 532, 534, 605 N.E.2d 368

(1992), citing *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971), paragraph one of the syllabus; *State v. Solomon,* 9th Dist. Lorain No. 22CA011916, 2023-Ohio-1935, ¶ 9. Consequently, Ohio's statutory scheme requires a child support calculation be made in accordance with the support worksheets. *Raff v. Raff* 5th Dist. Stark No. 2004CA00251, 2005-Ohio-3348; *Cutlip v. Cutlip* 5th Dist. Richland No. 02CA32, 2002 WL 31412399 (Oct.24, 2002). However, case authority also supports the view that, when a support modification is not warranted, courts need not include in the record a completed child support worksheet. *Barnard v. Kuppin* 1st Dist. Hamilton No. C-980360 and C-980400, 1999 Lexis 4185 (Sept. 10, 1999); *Nwabara v. Willacy* 8th Dist. Cuyahoga No. 8772, 2006-Ohio-6414; *Koustis v. Koustis* 11th Dist. Geauga No. 2015-G-0032, 2016-Ohio-7144; *Orefice v. Orefice* 8th Dist. Cuyahoga No. 70602, 1996 LEXIS 5752, (December 19, 1996).

{¶19} Therefore, based upon R.C. 3119.79(A), a trial court must recalculate support when an obligor or obligee files a motion to modify child support when the circumstances indicate that a modification may be appropriate. Although we recognize that the trial court in the case sub judice issued a detailed judgment entry, our review is hampered when the court did not complete a formal recalculation worksheet. It is also very problematic that sizeable deposits or monetary assets appear in

appellee's bank accounts without an adequate explanation, along with appellant's statement regarding unexplained expenses. Thus, we believe that the parties and the court should have the opportunity to fully address these and any other issues on remand.

{¶20} Accordingly, based upon the foregoing reasons, we sustain appellant's assignments of error, reverse the trial court's judgment, and remand this matter for further proceedings.

JUDGMENT REVERSED AND CAUSE
REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be reversed and the cause remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry these judgments into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                                    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.