[Cite as *Sowers v. Sowers*, 2018-Ohio-1057.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| AMANDA SOWERS | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2017-CA-19 |
| | : | |
| v. | : | Trial Court Case No. 2015-DR-166 |
| | : | |
| MATTHEW SOWERS | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of March, 2018.

. . . . . . . . . . .

CRAIG M. SAMS, Atty. Reg. No. 0089716, 10532 Success Lane, Dayton, Ohio 45458
      Attorney for Plaintiff-Appellee

SCOTT D. RUDNICK, Atty. Reg. No. 0000853, 121 West Third Street, Greenville, Ohio
45331
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} In this case, Defendant-Appellant, Matthew Sowers ("Matthew") appeals from a judgment denying his motion for an increase in child support to be paid by Plaintiff-Appellee, Amanda Sowers ("Amanda"). According to Matthew, the trial court erred in concluding that Amanda's child support obligation was not 10% greater than the obligation calculated at the time of the final decree.

{¶ 2} Matthew further contends that the trial court erred in finding that he failed to establish that Amanda was fully employed and was earning more than the current minimum wage in Ohio. And finally, Matthew contends that the trial court abused its discretion when it refused to make a child support award.

{¶ 3} We conclude that the trial court erred in requiring Matthew to establish a 10% deviation in the child support obligation and to also establish a substantial change of circumstances that was not contemplated at the time of the divorce decree, before the court would allow modification of child support. We further conclude that the trial court erred in finding that Amanda was not earning more than the current minimum wage in Ohio. In addition, the trial court erred by deviating from the calculated child support obligation without following the statutory requirements in R.C. 3119.22 and R.C. 3119.23.

{¶ 4} The court did not err in its conclusion about the amount of Matthew's gross income that was due to his wages from employment. However, the court did err in including mileage reimbursements in Matthew's gross income without considering whether the reimbursement caused Matthew, effectively, to have a higher income. Accordingly, the judgment of the trial court will be affirmed solely with respect to the calculation of Matthew's gross income from wages, will be reversed on all other grounds,

and will be remanded for further proceedings.

## I. Facts and Course of Proceedings

**{¶ 5}** In May 2015, Amanda filed a divorce complaint against Matthew. The complaint indicated that the parties had two children, R.S. and E.S., who were then, respectively, 10 and nine years old. Amanda was given temporary custody of the children, and Matthew was ordered to pay child support. However, in September 2015, the court granted Matthew emergency temporary custody based on a motion filed by a guardian ad litem that the court had appointed.

**{¶ 6}** A final divorce decree was filed on January 12, 2016, and was based on the parties' agreement. The decree designated Matthew as the residential parent and legal custodian of the children. Amanda was given reasonable visitation time, and was ordered to coordinate visitation with the administrator at the Family Health Center. Amanda was unemployed at the time of the divorce, and zero child support was ordered, per the parties' agreement. In addition, the decree granted the federal tax exemptions for the children to Matthew; however, the decree stated that Amanda would be entitled to claim E.S. as a dependent if her household income rose to a level allowing her to take advantage of a child dependence exemption.

**{¶ 7}** A document entitled "Form DR16" was also filed on January 12, 2016, and was incorporated into the divorce decree. The decree provided that if any conflict existed between the decree and the DR16, the DR16 would control.

**{¶ 8}** The DR16, itself, ordered Amanda to seek work. The court also attached a child support computation worksheet to the divorce decree, and for purposes of the

worksheet, imputed $16,375 in income to Amanda. According to the worksheet, Amanda's annual child support obligation would have been $3,630.87, or $302.50 per month. However, as was noted, the decree ordered zero support.

**{¶ 9}** In April 2016, Matthew filed a motion to correct the judgment and a motion for relief from judgment, based on his overpayment of child support that was supposed to be returned to him. By mistake, this provision had not been included in the divorce decree. The parties then filed an agreed entry in July 2016, which awarded Matthew a judgment of $1,070 in overpaid child support. Amanda agreed to begin paying $30 per month beginning August 1, 2016, and Matthew agreed to accept a reduced sum of $800 if the amount was paid in full on or before June 30, 2017.

**{¶ 10}** Matthew then filed a motion for modification of child support in September 2016, and a hearing was held on January 4, 2017. Following the hearing, the magistrate filed a decision, recommending that Matthew's request be overruled, and that child support remain at zero dollars. Matthew filed objections and supplemental objections, which the trial court overruled in July 2017. This appeal followed.


II. Alleged Error Concerning Support Obligation

**{¶ 11}** Matthew's First Assignment of Error states that:

The Trial Court Erred In Finding that the Appellee's Support Obligation Is Not Ten Percent Greater Than the Support Obligation Actually Calculated at the Time of the Decree.

**{¶ 12}** Under this assignment of error, Matthew contends that because zero child support was ordered at the time of the decree, the amount calculated in connection with

modification (about $299 per month) met the 10% requirement for a substantial change of circumstances in R.C. 3119.79(A). Matthew further contends that the trial court incorrectly created new law by finding that if an obligor is required to seek work, ultimately obtaining employment would not be a change of circumstances since it was contemplated by the decree.

{¶ 13} We review child support decisions for abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). However, the Supreme Court of Ohio has stressed that "most instances of abuse of discretion will result in decisions that are simply unreasonable." *Id.* The court has also said that "[a] decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 14} R.C. 3119.79(A) provides that:

If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid

under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.

**{¶ 15}** In finding that modification of support was not warranted, the trial court concluded that Matthew was required to establish that Amanda's support obligation was more than 10% greater due to her change in income, and was also required to establish that her change in circumstances was not contemplated at the time of the decree. Doc. # 70, Decision & Entry Adopting Magistrate's Decision and Order, p. 6. In this regard, the court compared Amanda's current support obligation of $299 with the $302 listed in the Child Support Computation Worksheet attached to the divorce decree, and found that her support obligation had not increased by more than 10%.

**{¶ 16}** The court also held that Matthew had not established the second requirement either, because when the divorce decree was filed, the parties contemplated that Amanda would obtain employment at some point. As a result, the court found no change in circumstances that would permit modification of child support. In reaching these conclusions, the trial court relied on our prior decision in *Baire v. Baire*, 102 Ohio App.3d 50, 656 N.E.2d 984 (2d Dist.1995). Doc. #70, at p. 5.

**{¶ 17}** However, shortly before the trial court's decision, we had concluded that our decision in *Baire* was inconsistent with the decision of the Supreme Court of Ohio in *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 679 N.E.2d 266 (1997). *See Mossing-Landers v. Landers*, 2016-Ohio-7625, 73 N.E.3d 1060, ¶ 51-52 (2d Dist.). We stressed, among other things, that *DePalmo* had not yet been decided when *Baire* was issued. *Id.* at ¶ 52.

{¶ 18} Like the case before us, *DePalmo* involved a situation where a father had waived child support when the parties' divorce decree was filed. *Mossing-Landers* at ¶ 56, citing *DePalmo* at 535-536. In *DePalmo*, the father subsequently moved for a support order, and the mother argued that the court should use what was called the "dual threshold test." This test restricted use of the 10% threshold test, and "allowed modification only where a change in circumstances had occurred so that the custodial parent could no longer provide the total amount of support that was reasonable, or where the non-custodial parent's circumstances had substantially changed so that the trial court could find, in its discretion, that support from the noncustodial parent was in the children's best interests." *Mossing-Landers* at ¶ 57, citing *DePalmo* at 538. The Supreme Court of Ohio rejected the use of this test, however. *Id.* at ¶ 58.

{¶ 19} We made the following observations about the court's rejection of the dual threshold test:

> First, the court stated [in *DePalmo*] that whether a support order is currently in existence "is a distinction without a difference and is immaterial to whether child support should be calculated according to the statutory guidelines." [*DePalmo*, 78 Ohio St.3d] at 539, 679 N.E.2d 266. As was noted, the court then stated that "[i]f a support order already exists, the only test to determine whether child support shall be modified is set forth by R.C. 3113.215(B)(4) [now R.C. 3119.79] * * *." (Emphasis sic.) (Parenthetical material added.) *Id.*

> The court went on to stress the requirement of strictly complying with the Child Support Guidelines, and stated that "[o]bviously, when the amount

of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met." *DePalmo*, 78 Ohio St.3d at 540, 679 N.E.2d 266. Notably, the court did not consider whether the change in circumstances was contemplated at the time of the original order, and did not agree with the obligor's argument that support (or rather the order of no support) should not be modified because "circumstances at the time of the hearing were substantially similar to those on * * * the date of the original agreement." *Id.* at 536-537, 679 N.E.2d 266.

Ultimately, the Supreme Court of Ohio stated that "[w]hen the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4) [now R.C. 3119.79(A)] in the Child Support Guidelines and the standards set out in *Marker* [*v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992)]." (Parenthetical material added.). *DePalmo* at 540–541, 679 N.E.2d 266.

As a result, the trial court was required to recalculate the support and, if the difference were more or less than 10 percent, *that would constitute a substantial change in circumstances.* This is not to say that the trial court has no discretion at all in the matter. R.C. 3119.22 specifically allows courts to deviate from the amount of support calculated if that amount "would be unjust or inappropriate and would not be in the best interest of the child." In this situation, however, the trial court must comply with *Marker* by including "findings of fact to support such determination."

*Marker*, 65 Ohio St.3d 139, 601 N.E.2d 496, at paragraph three of the syllabus.

(Emphasis added; footnote omitted.)   *Mossing-Landers*, 2016-Ohio-7625, 73 N.E.3d 1060, at ¶ 58-61.

{¶ 20} The facts in the case before us indicate that the decree and the order attached to the divorce decree ordered zero child support.   In calculating the child support for purposes of the requested modification, the trial court attributed $16,925 to Amanda, which resulted in an actual annual support obligation of $3,589.09, or $299.09 per month.   *See* Ex. A attached to Doc. #70.   This was clearly an increase of over 10% and the trial court, therefore, erred in concluding that modification was unwarranted under R.C. 3119.79.   *Mossing-Landers* at ¶ 33-65.   *Accord Schilling v. Ball*, 11th Dist. Lake No. 2016-L-072, 2017-Ohio-5511, ¶ 16-18 (trial court was not required to find a substantial change in circumstances not contemplated by the prior decree when it ordered appellant to pay $356 per month in child support despite prior agreement to deviate support to zero; 10% deviation in support amount was sufficient under *DePalmo*).

{¶ 21} A point we did not specifically mention in *Mossing-Landers* is the wording of R.C. 3119.79(A) itself, which finds a substantial modification sufficient to require modification if the recalculated amount "is more than ten per cent greater than or more than ten per cent less than the amount of child support *required to be paid pursuant to the existing child support order.*"   (Emphasis added.)   This statute does not refer to the amount of child support calculated as potentially payable in a prior child support computation worksheet; it refers to the amount *required to be paid* under the existing order.   This statement is not ambiguous.   Clearly, when the prior order requires zero

dollars to be paid, a recalculated amount of $299.09 is more than a 10% increase.

{¶ 22} We further note that nothing in the divorce decree prohibited either party from seeking modification of child support. *Mossing* at ¶ 65. Accordingly, the trial court erred in requiring Matthew to show a substantial change of parental circumstances in addition to the 10% change in the amount of child support. The First Assignment of Error, therefore, is sustained.

### III. Determination of Wages

{¶ 23} Matthew's Second Assignment of Error states that:

The Trial Court Erred in Determining that the Appellant Failed to Establish that the Appellee Is Fully Employed Earning More than $16,952.00 (the Current Minimum Wage in Ohio).

{¶ 24} Under this assignment of error, Matthew contends that the trial court erred in concluding that he failed to establish that Amanda was earning more than $16,952, or the current Ohio minimum wage. In this regard, Matthew notes that Amanda filed an affidavit of income and expenses, in which she stated that her gross annual wages were $22,048. He also notes that Amanda testified at the hearing that she was earning $10.60 per hour at Meijer, which would equate to $22,048 in gross income per year.

{¶ 25} Matthew has attached an affidavit to his brief, but there is no file-stamp on the affidavit, and it is not docketed in the trial court record. As a result, we will not consider it.[1] Nonetheless, Amanda did testify during the hearing, which was held in early

---

[1] Matthew's counsel did question Amanda at the hearing about an affidavit that the court had ordered her to prepare, and that Amanda had sent to him. Transcript of Proceedings, pp. 24-29. We assume this may be the same affidavit, but it was not

January 2017, that she was currently earning $10.60 per hour.[2]

**{¶ 26}** Amanda claimed at the hearing that she was "part-time," but admitted that she had worked 40 hours per week at Meijer ever since she was hired in early June 2016. She also said that Meijer was currently scheduling her 40 hours per week. Transcript of Proceedings, pp. 23-24. According to Amanda, Meijer had threatened to cut hours in January and February and had said that it had to "cut so many hours every week out of each department." *Id.* at p. 24. Amanda then stated, "I don't know how that's going to work." *Id.*

**{¶ 27}** Although Amanda claimed she was part-time, she had also consistently worked 40 hours per week since she was hired, and her testimony about the probability of receiving less hours was mere speculation. This is not a credibility decision to which we would normally defer; the court's calculation of Amanda's gross income at a minimum wage level was based on speculation. However, even at the minimum wage level used by the trial court, a 10% change in the amount of support existed.

**{¶ 28}** Based on the preceding discussion, the Second Assignment of Error is sustained.

### IV. Abuse of Discretion in Refusing to Order Child Support

**{¶ 29}** Matthew's Third Assignment of Error states that:

---

specifically identified at the hearing, nor was it made an exhibit.

[2] The magistrate used an incorrect hourly wage of $10.40 in its decision. *See* Magistrate's Decision, Doc. #63, pp. 2-3. In contrast, Amanda testified at the hearing that she had received a raise to $10.60 per hour. Transcript of Proceedings, p. 23. Based on Amanda's testimony, there is no question that if Amanda worked 40 hours per week, her yearly gross income would be $22,048.

The Trial Court Erred and Abused Its Discretion in Refusing to Make

an Award of Child Support.

{¶ 30} Under this assignment of error, Matthew contends that the trial court erred in failing to comply with requirements for ordering a deviation from the guidelines for child support, and, therefore, abused its discretion.

{¶ 31} As was noted, we review support orders for abuse of discretion, which most often occurs when a trial court's decision is based on unsound reasoning. *Booth*, 44 Ohio St.3d at 144, 541 N.E.2d 1028; *AAAA Enterprises, Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 32} R.C. 3119.22 allows a court to deviate "from the amount of child support that would otherwise result from the use of the child support guidelines and the applicable worksheet if the court determines that the actual annual obligation would be unjust or inappropriate and would not be in the child's best interest." (Citations omitted). *In re C.S.M.*, 2d Dist. Greene No. 2015-CA-28, 2015-Ohio-4608, ¶ 24.

{¶ 33} "If the court enters a child support order that deviates from the calculated amount, 'the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.' " *In re S.H.*, 2d Dist. Montgomery No. 23382, 2009-Ohio-6592, ¶ 46, quoting R.C. 3119.22. *Accord C.S.M.* at ¶ 24; *Lenoir v. Paschal,* 2d Dist. Montgomery No. 23732, 2010-Ohio-2922, ¶ 7.

{¶ 34} We have stressed that under the decision of the Supreme Court of Ohio in

*Marker*, "any court-ordered deviation from the applicable worksheet and the basic child support schedule must include findings of fact to support the determination." *C.S.M.* at ¶ 24, citing *Marker*, 65 Ohio St.3d at 143, 601 N.E.2d 496. R.C. 3119.23(A)-(O) lists 15 specific factors that courts may use in deciding whether to grant a deviation under R.C. 3119.22. Additionally, R.C. 3119.23(P) is non-specific and lets courts consider "[a]ny other relevant factor."

{¶ 35} In the case before us, the trial court concluded that the deviation issue was moot because Matthew failed to establish both a 10% deviation in the amount of support, and also failed to show a change of circumstances. The court then stated that:

> In any event, the parties agreed that it was in the best interests of the minor children to deviate to no child support at the time of the Decree. The Court specifically finds that the reasons to deviate child support to $0.00 are as true today as they were when child support was set by the parties.

Doc. # 70, p. 7.

{¶ 36} Although the court indicated the issue of deviation was moot, it nonetheless considered it, while failing to either make findings under R.C. 3119.22 or refer to any factors listed in R.C. 3119.23. Furthermore, the trial court's remark that the reasons for deviating were as true in 2017 as they were in 2015 when the parties agreed to waive support, is simply not supported by the record. The divorce decree mentioned only that Amanda was unemployed. In contrast, at the time of the modification hearing, Amanda was employed and had been fully employed for several months. Accordingly, the trial court abused its discretion to the extent that it deviated from the appropriate amount of support without complying with R.C. 3119.22 and R.C. 3119.23.

**{¶ 37}** In his brief, Matthew also contends that the trial court erred in calculating his income. We disagree, in part. In the first place, Matthew's gross earnings were not $32,000 as he contends. The exhibit Matthew submitted indicates that his gross earnings in 2016 were $35,566.09, which is the figure the trial court used. *See* Defendant's Ex. 1 and Doc. #70, pp. 2-3. Matthew's net earnings were $31,708.02, which is close to the figure he claims. However, the statute and worksheet refer to "gross," not "net" income. *See* R.C. 3119.022. Thus, the trial court did not err in this regard.

**{¶ 38}** Furthermore, we do not completely agree that the court erred with respect to the healthcare premiums. Contrary to Matthew's assertion, these amounts were not included in his gross income; the court simply did not credit him with payments for healthcare. The trial court noted that Matthew's employer paid the premiums and stated that it was impossible to determine if Matthew had paid any money for the premiums. *See* Doc. # 70, p.3, citing Defendant's Ex. 1. At the hearing, Matthew indicated that Defendant's Ex. 3 showed the cost of his health insurance monthly; he claimed that he paid a total of $830.85 per month, and that $493.24 of this amount was for his children's health coverage. Transcript of Proceedings, p. 11. However, this is inconsistent with Ex. 1, which indicates a possible yearly deduction from his wages of around $3,131.16 for health and dental coverage, or about $260.93 per month.[3] Since this matter is being reversed and remanded, the trial court can decide on remand what amount, if any, should

---

[3] We say "possible" because Matthew did not testify about these amounts on Ex.1 at trial, and the deductions on that exhibit merely state "Dent 125" and "H 125." For purposes of discussion, we assume these may be deductions for health and dental coverage, as it seems clear that is what the amounts represent.

be credited toward premiums, since it appears that Matthew did pay some amount for the children's healthcare.

**{¶ 39}** The trial court also added $8,544.96 in mileage reimbursements and other payments to arrive at a figure of $44,110 for Matthew's gross income. *See* Doc. #70, p. 3 and Ex. A attached to Doc. #70.[4] This amount was taken from Matthew's pay statement. *See* Defendant's Ex. 1. As support for its decision, the trial court cited two cases: *Neal v. Halsey*, 2d Dist. Greene No. 95-CA-22, 1995 WL 765964 (Dec. 20, 1995), and *Lyons v. Bachelder*, 5th Dist. Morrow No. 2004AP0017, 2005-Ohio-4966. Doc. #70, p. 6.

**{¶ 40}** *Neal* involved a decision on the gross income of an independent insurance salesman who had claimed various business expenses on his tax return, including deductions for the standard mileage rate and specific expenses for maintenance and repair of his car. In calculating his income for purposes of child support, the trial court accepted all of his business expenses other than the deduction for the automobile expenses (including mileage). *Neal* at *1.

**{¶ 41}** After the opposing party appealed, we considered R.C. 3113.215(A)(2), which defined "gross income," R.C. 3113.215(A)(3), which defined "self-generated income," R.C. 3113.215(A)(4)(a), which defined "ordinary and business expenses incurred in generating gross receipts," and R.C. 3113.215(A)(4)(b), which defined items like depreciation and other noncash items that may be deducted under federal tax returns but not as ordinary and necessary business expenses incurred in generating gross

---

[4] The actual total for the wages and reimbursements is $41,111.05, but this slight difference is irrelevant for purposes of our discussion.

receipts. *Id.* at *2.[5]

{¶ 42} We also considered federal tax law, which allowed deduction of expenses incurred in carrying on a trade or business and traveling expenses while an individual is away from home in pursuit of a trade or business. *Id.* at *3, citing 26 U.S.C. 162(a). At the time, the standard business mileage rate was $.29 a mile, which included a depreciation amount of $.12 per mile. *Id.*

{¶ 43} After considering these matters, we concluded that the trial court erred by failing to deduct any of the business mileage expenses from the obligor's gross income. We allowed the amount of mileage the obligor claimed to have driven for business, using the standard mileage rate; however, we also held that "for purposes of child support calculation, a parent is not entitled to the type of depreciation included within the standard mileage deduction. R.C. 3113.215(A)(4)(b). Therefore, twelve cents per mile must be deducted from the twenty-nine cent standard rate." *Id.*

{¶ 44} Our comments in *Neal* do not support a requirement for inclusion of mileage reimbursements within gross income for purposes of calculating child support, nor do they eliminate a need for analysis. Under our decision in *Neal*, the following amounts may be added to an obligor's gross income: (1) the amount attributable to depreciation, using the standard mileage allowed by the Internal Revenue Service for business travel; and (2) any part of reimbursed mileage that was used for personal, rather than business travel. Consequently, including the total amount and also failing to use any analysis for including particular amounts would be incorrect.

---

[5] These sections were later re-codified, respectively, as R.C. 3119.01(C)(7), R.C. 3119.01(C)(13), R.C. 3119.01(C)(9)(a), and R.C. 3119.01(C)(9)(b). There was no pertinent change in the definitions.

{¶ 45} *Lyons* involved a doctor's assertion that he should receive a deduction from his calculated income for business mileage in the amount of $4,635 for two vehicles. The doctor drove one vehicle, and his wife drove the other. *Lyons*, 5th Dist. Morrow No. 2004AP0017, 2005-Ohio-4966, at ¶ 41 and 48-59. The doctor's medical corporation, which was titled in his name, had deducted expenses in the amount of $4,635.00 for the use of motor vehicles driven for business-related miles. *Id.* at ¶ 45. During trial, the doctor testified that the amount of his personal use of the auto had been factored into his W-2 form. However, he failed to testify as to any particular amount that had been included in his taxable income. *Id.* at ¶ 49. Based on the doctor's testimony, the court of appeals held that the trial court did not abuse its discretion by failing to deduct the business mileage expense from the doctor's income. The court of appeals noted that the doctor had not offered evidence to the contrary. *Id.* at ¶ 71. Again, this fact-based holding does not justify a blanket statement that mileage reimbursements from an employer are properly included in gross income for child support calculation purposes.

{¶ 46} *Neal* differs somewhat from the case before us in that it involved self-generated income, which is statutorily defined to include "expense reimbursements * * * if the reimbursements are significant and reduce personal living expenses." R.C. 3119.01(C)(13). Self-generated income is also limited to "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." *Id.*

{¶ 47} In contrast, "gross income" (which applies here) is defined by R.C. 3119.01(C)(7) as "the total of all earned and unearned income from all sources during a

calendar year * * *." The statute does not include expense reimbursements within the listed examples of "income."

{¶ 48} Recently, in *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, the Supreme Court of Ohio considered whether a trial court erred in including within gross income certain employer-paid benefits like the value of a car, car insurance, and a cellular telephone. *Id.* at ¶ 7. The obligor argued that these items should "be considered part of gross income only if the recipient is self-employed, a proprietor of a business, or a joint owner of a partnership or closely held corporation." *Id.* at ¶ 12. In support of this proposition, the obligor reasoned that because "the only statutory reference to company cars and other in-kind items is in the context of 'self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation,' the General Assembly meant to exclude such items from gross income when they are received outside that context." *Id.* at ¶ 12-13, referring to the definitions of "gross income" in R.C. 3119.01(C)(7) and "self-generated income" in R.C. 3119.01(C)(13).

{¶ 49} The Supreme Court of Ohio disagreed, however, commenting that:

We find nothing in the statutory scheme to support that conclusion. To be sure, R.C. 3119.01(C)(13) states that "self-generated income" includes company cars. That is a far stretch from stating that company cars cannot be part of gross income unless they are from self-generated income.

The record indicates that Morrow [the obligor] did not have a car, car insurance, or phone, other than the car, car insurance, and phone provided to him by his employer. Based on that understanding, the trial court, after

reviewing case law, concluded that "it was reasonable to include the value of these benefits in the Plaintiff's gross income." We agree. If his employer did not provide a car, Morrow would have had to purchase or lease one on his own, using his own funds. Accordingly, it is sensible to conclude that the provision of a car is no different from the provision of funds to buy or lease a car. Either way, the person receiving the benefit effectively has a higher income.

*Morrow*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, at ¶ 14-15.

**{¶ 50}** The issue, therefore, appears to be the same whether a parent is an employee or fits within the particular categories outlined in R.C. 3119.01(C)(13). Specifically, a court should consider whether a "reimbursement" or benefit caused a parent, effectively, to have a higher income. An example of this can be found in *Parrick v. Parrick*, 3d Dist. Hancock No. 5-12-12, 2013-Ohio-422. In that case, the court of appeals found no error in a trial court's decision to exclude an employee's income mileage reimbursements from her employer as part of her gross income for child support purposes. The court commented that the employee's "expense reimbursements from her employers were merely repaying her for the money that she had spent, as required by her job." *Id.* at ¶ 33.

**{¶ 51}** In the case before us, the record does not indicate whether Matthew's reimbursement caused him to effectively have a higher income, and the trial court did not consider this issue. Instead, the court included the total reimbursement within Matthew's gross income, while offering no reasoning and citing cases that do not support blanket inclusion. Accordingly, since this case is being reversed and remanded, the court should

reconsider this issue in view of the above authority, and should allow the presentation of further evidence.

{¶ 52} Based on the preceding discussion, the Third Assignment of Error is sustained in part and overruled in part.

V. Conclusion

{¶ 53} Matthew's First and Second Assignments of Error having been sustained, and his Third Assignment of Error having been sustained in part and overruled in part, the judgment of the trial court is affirmed solely with respect to the court's decision on the amount of Matthew's gross income from wages. In all other respects, the judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Craig Sams
Scott D. Rudnick
Hon. Jeannine N. Pratt